IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ANDREA KELLY | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 1:16-cv-00196<br>)<br>) |
| THE BOEING COMPANY | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant The Boeing Company's ("Defendant" or "Boeing") Motion for Summary Judgment. Plaintiff Andrea Kelly ("Plaintiff"), a sixty-five year old African-American female, worked at Boeing as a facilities planner on a government contract between October 2009 and May 2015. Plaintiff alleges that she was subjected to discrimination and retaliation on the basis of her sex, race, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et. seq.*; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.*

Plaintiff began working for Boeing in October 2009, when Boeing became the primary contractor for a classified government contract. Plaintiff worked as a facilities planner, providing support to ensure that Boeing and the government customer were effectively using space at their classified government facility. During her time at Boeing, Plaintiff reported to five first- and second-level supervisors, all of whom were white males: Bernie Carey, John Niles, Keith Ensley, Andrew Miller, and Greg Perkinson. Plaintiff alleges that these supervisors disregarded her skills and experience by excluding her from meetings, assigning her low-level tasks inconsistent with her position, and making space-planning decisions without her.

Plaintiff points to a several occasions where she felt disregarded and excluded to support her claims of discrimination and retaliation. For instance, Plaintiff claims that Bernie Carey routinely sent a younger white female and low-level hourly employee to team-building activities and planning meetings instead of sending Plaintiff. Plaintiff also claims that Boeing brought in a white male independent contractor to perform space-planning duties that should have been performed by Plaintiff, and that her supervisors assigned her tasks unrelated to her position and constantly picked fights with her. Additionally, Plaintiff alleges that a Boeing manager bypassed Plaintiff during the approval process of office renovations, which

prevented Plaintiff from keeping the government customer informed on space planning matters.

Plaintiff had several confrontations with her supervisors where she addressed feeling excluded from space planning decisions—some of which resulted in loud outbursts and yelling. One of these incidents occurred during an October 23, 2013 meeting between Plaintiff, John Niles, and Greg Perkinson. During that meeting, Plaintiff raised her voice at her supervisors. Feeling that Plaintiff had acted unprofessionally and inappropriately, Mr. Niles and Mr. Perkinson reported Plaintiff's behavior to Boeing Human Resources. In response to the reports, Human Resources investigated the incident and issued Plaintiff a written warning in the form of a Corrective Action Memo. The memo found that Plaintiff had violated one of Boeing's expected behaviors: "Treat others and expect to be treated with respect, dignity, and trust."

Boeing's expected behaviors are contained in Boeing's Employee Corrective Action Process Requirements, a written progressive discipline procedure that sets out general principles for administering corrective action. The procedure includes various categories of violations of expected behavior, one of which is "Unacceptable/Disruptive Behavior or Communication." Under the progressive discipline procedure that Boeing uses to discipline employees, the level of discipline

3

imposed on employees who commit repeated violations of the same or similar policies increases in severity with each violation.

Plaintiff received a second Corrective Action Memo on July 3, 2014, which resulted from a confrontation between Plaintiff and a Boeing manager, Jonathan Mollerup. Upon investigating the incident, Human Resources determined that Plaintiff had used profanity and name-calling and had behaved unprofessionally. Because Plaintiff had previously received a written warning for the same type of behavior, Boeing issued Plaintiff a one-day suspension in accordance with its progressive discipline policy. When Human Resources issued Plaintiff's second corrective action, Plaintiff yelled at her supervisor and stated that the Boeing site was run by white men. Based on this conduct, Human Resources recommended that Boeing issue Plaintiff further discipline, but her supervisors declined to do so.

Plaintiff received a third Corrective Action Memo on May 28, 2015, after Human Resources determined that she had engaged in inappropriate and disruptive behavior during a meeting with a coworker, Alan Hines, and her supervisor, Keith Ensley. During the meeting, Mr. Ensley observed that Plaintiff raised her voice and was hostile toward her coworker, and that she refused to acknowledge any wrongdoing. During the meeting, Plaintiff told Mr. Hines and Mr. Ensley that she was tired of being beat up on by white men. Mr. Ensley contacted Human Resources and

4

requested corrective actions for both Plaintiff and Mr. Hines. Like the two prior Corrective Action Memos, Plaintiff's May 28, 2015 Corrective Action Memo was given for violating the expected behavior of "Treat others and expect to be treated with respect, dignity, and trust."

Through the third Corrective Action Memo, which cited Plaintiff's "continued display of inappropriate and disruptive behavior," Boeing terminated Plaintiff's employment, effective May 29, 2015. Plaintiff alleges that she was terminated in retaliation because she complained about being bullied, and because her white male managers resented her as an African-American woman who confronted her supervisors. Following Plaintiff's termination, Boeing hired Katherine Ressman, a 38-year old white female, to be the new facilities planner.

Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission on February 9, 2016. Plaintiff filed this action on February 25, 2016, alleging sex discrimination (Count I), race discrimination (Count II), age discrimination (Count III), and retaliation (Count IV). Following discovery, Defendant now moves for summary judgment on all counts.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact, and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden of showing that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A plaintiff alleging sex, race, and age discrimination or retaliation may prove her case by using either (1) direct or circumstantial evidence of discrimination; or (2) the burden-shifting approach under the *McDonnell Douglas* "pretext" framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Plaintiff proceeds under the *McDonnell Douglas* approach. Under *McDonnell Douglas*, a plaintiff must first state a prima facie case of discrimination. See Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006). If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. Id. If the defendant satisfies this showing, the plaintiff must show that

the articulated reason is a pretext for discrimination. Id. at 430-31.

Plaintiff fails to establish a prima facie claim of discrimination. To establish a prima facie claim of sex and race discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) that similarly situated employees outside her class received more favorable treatment, or, if the plaintiff was terminated, that the position was filled by similarly qualified individuals outside her protected class. Gerner v. Cty. of Chesterfield, 674 F.3d 264, 266 (4th Cir. 2012); Holland, 487 F.3d at 214.

To establish an age discrimination claim, Plaintiff must show that: (1) she was older than 40; (2) she was discharged; (3) she was qualified for the job and met the defendant's legitimate expectations; and (4) her position remained open or was filled by a similarly qualified individual who was substantially younger. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006). A plaintiff suing under the ADEA must show that "but for" age discrimination, the adverse employment action would not have occurred. See Gross v. FBL Fin. Servs. Ins., 557 U.S. 167, 176 (2009).

7

For her sex and race discrimination claims, Plaintiff cannot meet the third element of a prima facie case in regard to her allegations that she was excluded from meetings and not allowed to perform job duties, because these are not actionable adverse actions. An adverse employment action is one that adversely affects the terms, conditions, or benefits of the plaintiff's employment, such that the employee suffers some significant detrimental effect from the action in question. Holland, 487 F.3d at 219.

Plaintiff alleges that she was excluded from meetings that allegedly concerned her job duties, and that she was not allowed to perform her space-planning duties and instead was given tasks unrelated to her position. These incidents do not constitute adverse employment actions, because Plaintiff did not suffer a demotion, pay decrease, or performance-based discipline. See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (ruling that Plaintiff's claim that he was excluded from "important meetings" was not an actionable adverse action). In the absence of any tangible effect on Plaintiff, her dissatisfaction with her job duties and her alleged exclusion from meetings does not rise to the level of an adverse action. As a result, Plaintiff's claims predicated on allegations that she was prevented from performing her job and excluded from meetings should be dismissed.

Furthermore, Plaintiff cannot meet the fourth element of a prima facie case because she fails to present valid comparator evidence showing similarly situated employees were treated more favorably. First, Plaintiff testified that white women were mistreated in the same fashion she was by the same supervisors. Plaintiff's admission that white employees were treated similarly negates her claim that she was mistreated because she was black. Second, the evidence shows that male employees were not treated differently than Plaintiff. Three of the supervisors Plaintiff claims discriminated against her—John Niles, Keith Ensley, and Greg Perkinson—issued progressive discipline to male employees for engaging in unprofessional conduct similar to the conduct for which Plaintiff was disciplined. In fact, Alan Hines, Plaintiff's white male coworker involved in the May 28, 2015 meeting, was disciplined for his behavior during the same series of incidents that led to Plaintiff's termination. Last, Boeing hired a female employee for Plaintiff's position following Plaintiff's termination. This fact undercuts Plaintiff's theory that she was terminated on the basis of her sex. See Garrow v. Economos Props., Inc., 406 F. Supp. 2d 635, 640 (E.D. Va. 2005), aff'd, 242 F. App'x 68 (4th Cir. 2007) ("It is not discrimination to replace a member of a protected class with another member of the same protected class.").

9

In regards to age discrimination, Plaintiff has not proven that her termination would not have occurred but for her age. See Gross, 557 U.S. at 176. Rather, Defendant terminated Plaintiff because she had already received two Corrective Action Memos under Boeing's progressive disciplinary process. As a result, Plaintiff's age discrimination claim also fails.

Alternatively, even if Plaintiff were able to make a prima facie case of discrimination, Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination satisfy the burden of production in the *McDonnell Douglas* framework and shift the burden back to Plaintiff to prove that Boeing's proffered reason was not the true reason for her termination but a mere pretext for discrimination. Defendant has articulated a legitimate reason for Plaintiff's termination: Plaintiff's supervisors observed that she repeatedly engaged in inappropriate and unprofessional conduct. An employee's unprofessional and disruptive behavior is a legitimate, non-discriminatory reason for discipline and termination, as is terminating an employee under a progressive disciplinary policy.

Here, Plaintiff engaged in multiple acts of unprofessional behavior. She was disciplined for such behavior under Boeing's progressive disciplinary policy. Under that policy, Plaintiff received three corrective actions, each of which was preceded by a Human Resources investigation. Boeing reasonably relied on

the results of those investigations in disciplining Plaintiff, including terminating her after her third instance of unprofessional behavior. Thus, Boeing's actions were not a pretext for discrimination, even if Plaintiff disagreed with the results of the investigation and with her termination. Furthermore, as evidenced by its corrective action with Alan Hines, Boeing applied its progressive discipline process to white and/or male employees when they engaged in similar unprofessional conduct, further underscoring the non-pretextual nature of Plaintiff's discipline and termination. Plaintiff has not shown how Defendant's conduct amounted to discrimination beyond her own inference that because her supervisors were white men, they must have discriminated against her because she is a black women, and she has not shown that the legitimate, nondiscriminatory reason for her termination was a mere pretext for discrimination. Thus, Plaintiff's sex, race, and age discrimination claims fail, and Defendant is entitled to summary judgment on Count I, Count II, and Count III.

In Count IV of her Complaint, Plaintiff alleges that she was terminated in retaliation for reporting that she was bullied by white men. To establish a prima facie case of retaliation, Plaintiff must prove that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) her protected activity was the but-for cause of the adverse action.

11

Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013); EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).

Plaintiff fails to make a prima facie case of retaliation because, even if her complaint that she was being mistreated by white men constituted protected activity, she cannot prove that this activity was the but-for cause of her termination, and she cannot rebut Boeing's legitimate reasons for her termination. As explained above, Boeing progressively disciplined Plaintiff for three separate incidents where managers believed she engaged in inappropriate and unprofessional conduct. Each corrective action was issued after Human Resources conducted an investigation that determined Plaintiff had violated Boeing's expected behaviors. Under the progressive policy, Boeing applied increasingly severe discipline for each incident, culminating in Plaintiff's termination. Boeing's application of progressive discipline for unprofessional behavior was a legitimate, non-retaliatory reason for Plaintiff's termination. Thus, Plaintiff's retaliation claim fails, and Defendant is entitled to summary judgment on Count IV.

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of the Defendant on Counts I, II, III, and IV. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December 12, 2016